IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN A. TRAKSELIS,<br><br>    Plaintiff,<br><br>    v.<br><br>VILLAGE OF JUSTICE; SUSANNE SKJERSETH, as Representative of the Estate of Joseph R. Pavlik, Jr., Star #230; and RONALD M. WARD, Star #234.<br><br>    Defendants. | Case No. 20 CV 936<br><br>Hon. Georgia N. Alexakis |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff John A. Trakselis brings this suit alleging constitutional violations and state law claims stemming from his arrest following a traffic stop on May 2, 2018. Defendants Village of Justice and two responding police officers have moved for summary judgment on all claims. For the reasons below, the Court grants defendants' motion for summary judgment. [112].

### BACKGROUND

The following facts are undisputed unless otherwise noted. Village of Justice Officer Joseph Pavlik Jr. was on patrol around 4:30 a.m. on May 2, 2018, when he spotted Trakselis driving a vehicle in front of him. [131] ¶ 77. Officer Pavlik recognized Trakselis from his previous contacts on the job and knew that his Illinois driver's license had been revoked.[1] *Id.* ¶ 78; [113-2] at 4:15–17; *see also* [113] ¶ 12;

---

[1] The Court further discusses this particular fact later in this opinion. *See infra* at 8–11.

Dash Camera Video ("Dash Cam") at 4:31:01 (Officer Pavlik calls out: "Hey John, put your hands out the window").[2] Officer Pavlik initiated a traffic stop on the vehicle Trakselis was driving. Dash Cam at 4:30:27.

After Trakselis pulled over, Officer Pavlik directed him out of the vehicle, handcuffed him, and instructed him to sit in the back of the squad car. *Id.* at 4:31:55–4:33:03; [133] ¶ 16. Shortly thereafter, Officer Ronald M. Ward arrived on the scene to assist. [131] ¶ 90. At the time of the stop, Trakselis was driving a vehicle registered to his mother. *Id.* ¶ 94; [113-4] at 24:12–14. Before Trakselis left the scene, Officer Ward arranged to have the vehicle towed and provided a copy of the tow sheet to Trakselis. [131] ¶¶ 91, 95; [113-4] at 23–26. Officer Pavlik eventually transported Trakselis to the Justice Police Station in his squad car. [113-4] at 25:1–6. Meanwhile, Officer Ward stayed on the scene until the tow truck took the vehicle away. *Id.* at 25:7–9.

At some point in relation to the traffic stop and Trakselis' arrest—the parties dispute the precise timing—Officer Pavlik confirmed Trakselis' driver's license status, including by contacting dispatch and requesting a check on the vehicle's registration and Trakselis' driver's license status.[3] [131] ¶ 44; [113-3] ¶¶ 8, 10. The

---

[2] Trakselis provided the Court with a link to the dash-cam video via Dropbox.
[3] The parties dispute whether Officer Pavlik confirmed that Trakselis' Illinois license was revoked before or after arresting Trakselis. *See* [131] ¶¶ 79–80. At Trakselis' preliminary hearing, Officer Pavlik testified that he confirmed the revocation before initiating the traffic stop via the mobile data terminal ("MDT") in his squad car. *See* [113-2] at 4:20–5:2. Meanwhile, the call log for the Computer Aided Dispatch ("CAD") report reflects that Officer Pavlik's inquiry to dispatch came after he initiated the stop and, based on the events depicted on the dash-cam video, after Pavlik appears to have placed Trakselis under arrest. *Compare* [131-3] at 2 (call to dispatch "created" at 4:35 a.m.) *with* Dash Cam at 4:30:27 (Officer Pavlik initiates stop) *with* Dash Cam at 4:31:59 (Officer Pavlik begins process of placing handcuffs

subsequent inquiry to the Secretary of State showed that Trakselis did not have a valid Illinois license and that his Illinois driving privileges had been revoked on January 28, 2012, and again on July 2, 2015. [131] ¶¶ 45–46; [113-3] ¶¶ 12, 14. The inquiry also returned that Trakselis had a facially valid Indiana driver's license at the time of the stop, which had been issued on December 1, 2017, and which did not expire until February 28, 2022. [131] ¶ 47; [113-3] ¶ 17.

Trakselis' Indiana driving records further indicate that the license issued to him in December 2017 was a "duplicate," or "replacement," copy issued after Trakselis reported that he lost his license, *see* [113-11] at 5, 26, and that, before the encounter with Officer Pavlik, Trakselis had last renewed his Indiana license on March 17, 2016, *see* [113-11] at 5, 17. Both Illinois and Indiana are part of the Driver License Compact ("the Compact"), which is an agreement requiring each participating state to report license suspensions and traffic violations to other participating states and to give violations in other states the same effect as if they had occurred in the home state. *See Driver License Compact*, NAT'L CTR. FOR INTERSTATE COMPACTS, https://compacts.csg.org/compact/driver-license-compact (last visited Dec. 2, 2024); *see also* [129] at 4; [132] at 2.

---

on Trakselis). The parties' briefs do not address the distinct possibility that Officer Pavlik's use of his MDT was separate and apart from his subsequent call to dispatch. *See, e.g.*, *Swanigan v. Trotter*, 645 F. Supp. 2d 656, 666–67 (N.D. Ill. 2009). Because the Court ultimately concludes that Officer Pavlik's pre-stop personal knowledge of Trakselis' revoked Illinois license supplied probable cause for Trakselis' arrest, *see infra* at 10–11, the parties' dispute over what confirmation of that knowledge Officer Pavlik obtained, and when he obtained it, does not preclude summary judgment on Counts I and III (Trakselis' false arrest and false imprisonment claims).

3

With respect to his Illinois license, Trakselis' full driving records reveal a history of revocations and suspensions of his Illinois driving privileges. Since 2011, Trakselis' driving privileges were revoked three times (in November 2011, January 2012, and July 2015), each following a conviction for driving under the influence of drugs or alcohol. [131] ¶¶ 36, 37, 39. In addition to these revocations, Trakselis' Illinois driving privileges were suspended twice—once in January 2011 and again in March 2014. *Id.* ¶¶ 35, 38. Trakselis incurred the second suspension after he refused to submit to an alcohol or blood test. *Id.* ¶ 38. Illinois never reinstated Trakselis' driving privileges following this string of revocations and suspensions. *Id.* ¶ 40.

On May 30, 2018, the Circuit Court of Cook County held a preliminary hearing to determine whether there was probable cause to charge Trakselis for driving with a revoked license. *See generally* [113-2]. During the hearing, Officer Pavlik testified that he knew once he recognized Trakselis that his Illinois license had been revoked. *Id.* at 4:7–17, 7:16–19. He also testified that, before conducting the traffic stop, he confirmed the revocation status via his MDT. *Id.* at 4:20–21, 7:13–15. Based on Officer Pavlik's testimony, the court found that there was probable cause to charge Trakselis for felony driving with a suspended or revoked license in violation of Illinois law, 625 ILCS 5/6-303(a).

Trakselis filed a pro se complaint in February 2020 and filed an amended complaint, also pro se, several months later. [1]; [17]. The district court previously assigned to this matter appointed Trakselis counsel in July 2021. [37]; [38]. With the assistance of counsel, Trakselis filed a second amended complaint, naming the Village

4

of Justice, Officer Pavlik,[4] and Officer Ward as defendants. [57]. The complaint asserts claims for (1) false arrest against Officers Pavlik and Ward (Count I), (2) unreasonable seizure of property against Officers Pavlik and Ward (Count II), (3) false imprisonment against all defendants (Count III), and (4) malicious prosecution against all defendants (Count IV). Trakselis brings Counts I and II under 42 U.S.C. § 1983 and Counts III and IV under state law. [129] at 1–2. In July 2024, defendants moved for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it affects the substantive outcome of the litigation, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the nonmoving party, *see Scott v. Harris*, 550 U.S. 372, 380 (2007). The nonmoving party can defeat summary judgment only by showing that a reasonable jury could render a verdict in its favor. *See Anderson*, 477 U.S. at 248. At summary judgment, the Court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *See id.* at 255.

---

[4] Officer Pavlik passed away in July 2020. [23]. In November 2022, Susanne Skjerseth, the Special Representative of Pavlik's estate, was substituted for Officer Pavlik as a named defendant. [75].

**DISCUSSION**

Defendants make several arguments in their motion for summary judgment, including that (1) the officers had probable cause to arrest, charge, and detain Trakselis for driving with a revoked license, (2) Trakselis lacks standing to pursue Count II, (3) the officers are entitled to qualified immunity, (4) the Village cannot be held liable under a *respondeat superior* theory of liability, and (5) Counts III and IV are barred by the applicable statute of limitations.

The Court begins and ends its analysis with probable cause. Defendants contend that all four counts should be dismissed because the arresting officers had probable cause to believe that Trakselis had committed the crime of driving with a revoked license. The Court agrees with defendants. The Court also disagrees with Trakselis' argument that the existence of his Indiana license warrants a different conclusion.

**A. Probable Cause**

Probable cause that an individual has committed a crime is a defense to Trakselis' § 1983 claim for false arrest and his state law claims for false imprisonment and malicious prosecution. *See Abbott v. Sangamon County., Illinois*, 705 F.3d 706, 713–14 (7th Cir. 2013); *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 473–74 (1990). As for Trakselis' claim for unreasonable seizure of property, "[t]he weight of authority … holds that police may seize a car without a warrant pursuant to a forfeiture statute if they have probable cause to believe that the car is subject to forfeiture." *United States v. Mendoza*, 438 F.3d 792, 796 (7th Cir. 2006) (quoting

6

*United States v. Pace*, 898 F.2d 1218, 1241 (7th Cir. 1990)). Illinois law provides for forfeiture under the circumstances of Trakselis' arrest: where an individual drives with a revoked license and his license was revoked for driving while intoxicated. *See* 720 ILCS 5/36–1(a)(7) (providing for forfeiture of vehicles as described in § 6-303(g)); 625 ILCS 5/6-303(g)(1) (providing for forfeiture based on § 6-303 violation where license was revoked under 625 ILCS 5/11-501, which is the provision for driving while under the influence of alcohol or drugs).

"Police officers have probable cause to arrest an individual when 'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)). "The court evaluates probable cause 'not on the facts as an omniscient observer would perceive them,' but rather 'as they would have appeared to a reasonable person in the position of the arresting officer.'" *Id.* (quoting *Kelley*, 149 F.3d at 646). Although the existence of probable cause is usually a question of fact for a jury, summary judgment is appropriate if "there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 473 (7th Cir. 1997).

Here, there is no genuine dispute that Officer Pavlik had probable cause to arrest and detain Trakselis for driving with a revoked license. Illinois law makes it a Class A misdemeanor to drive while one's license, permit, or privilege to drive is

revoked or suspended under Illinois law or under the law of any other state. *See* 625 ILCS 5/6-303(a).[5] At the time of Trakselis' arrest,[6] Officer Pavlik knew based on his previous encounters with Trakselis that his driving privileges in Illinois had been revoked. [131] ¶ 78; [113-2] at 4:7–17. Therefore, when he saw Trakselis behind the wheel of a vehicle, Officer Pavlik reasonably believed that Trakselis was violating § 6-303(a)'s prohibition against driving with a revoked license. *See United States v. Hope*, 906 F.2d 254, 258 (7th Cir. 1990) (officer's knowledge of defendant's suspended license was sufficient "to warrant the belief that [defendant] was operating a vehicle without a valid driver's license in violation of state law, and thus had probable cause to arrest [him]"); *United States v. Gonzalez*, No. 07-CR-243, 2008 WL 3059468, at *6 (E.D. Wis. Aug. 5, 2008) (relying on *Hope* to conclude that officer's knowledge of revoked license was sufficient to establish probable cause).

In opposing defendants' motion for summary judgment, Trakselis tries to undermine Officer Pavlik's testimony from the preliminary hearing about his pre-

---

[5] The statute's full text provides:

> Driving while driver's license, permit, or privilege to operate a motor vehicle is suspended or revoked.
>
> (a) Except as otherwise provided in subsection (a-5) or (a-7), any person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license, permit, or privilege to do so or the privilege to obtain a driver's license or permit is revoked or suspended as provided by this Code or the law of another state … shall be guilty of a Class A misdemeanor.

625 ILCS 5/6-303(a).

[6] Although the parties do not pinpoint the time of arrest, based on the Dash Cam video, the Court places that event at 4:31:59 a.m., which is when Officer Pavlik begins the process of placing handcuffs on Trakselis. *See* Dash Cam at 4:31:59.

8

arrest personal knowledge of Trakselis' revoked Illinois license. In particular, in response to defendants' Rule 56.1 statement of fact that Officer Pavlik knew about Trakselis' revoked Illinois license based on his prior contact with Trakselis, Trakselis responded: "Undisputed as to Pavlik's prior contact with Trakselis and Officer Pavlik's statement of his *purported* knowledge." [131] ¶ 78 (emphasis added). Although Trakselis only admits the asserted fact as to Officer Pavlik's *purported* knowledge, the Court deems that fact admitted as to Officer Pavlik's actual knowledge.

Local Rule 56.1 ("LR 56.1") requires a party moving for summary judgment to file and serve a "statement of material facts," N.D. Ill. LR 56.1(a)(2), consisting of concise numbered paragraphs, "supported by citation to … specific evidentiary material," N.D. Ill. LR 56.1(d). The party opposing the motion for summary judgment is required to file and serve a response, consisting of numbered paragraphs corresponding to each paragraph of the statement of material facts. N.D. Ill. LR 56.1(b)(2), (e)(1). To the extent the opposing party disputes any of the movant's asserted material facts, the response must "cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." N.D. Ill. LR. 56.1(e)(3). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Id*.

District courts are entitled to "require strict compliance with local summary-judgment rules." *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 790 (7th Cir. 2019). Where one party supports a fact with admissible evidence and the other party

fails to controvert the fact with citation to admissible evidence, the Court deems the fact undisputed. *See Lipinski v. Castaneda*, 830 F. App'x 770, 771 (7th Cir. 2020) (affirming district court's decision deeming moving party's facts admitted under Local Rule 56.1 where non-moving party's response purported to "disput[e] several facts," but "cited no supporting evidence and did not offer facts of [its] own to show a genuine dispute"); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218–19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817–18 (7th Cir. 2004) ("[W]here a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial."); *see also Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough. The non-movant must cite to particular parts of materials in the record.") (cleaned up); *Caisse Nationale de Credit v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("A party seeking to defeat a motion for summary judgment is required to wheel out all its artillery to defeat it.") (cleaned up).

Here, Trakselis has cited no evidence to contradict or undermine Officer Pavlik's testimony from the preliminary hearing regarding his pre-stop personal knowledge of Trakselis' revoked Illinois license. [131] ¶ 78. He disputes only whether Trakselis, in fact, lacked driving privileges in Illinois based on the existence of his Indiana license. *Id.* In other words, Trakselis disputes the conclusion that Officer Pavlik drew based on his knowledge of the status of Trakselis' Illinois license—but

10

not the knowledge itself. The Court therefore deems admitted the following fact: that, based on his prior contact with Trakselis, Officer Pavlik knew Trakselis' Illinois license had been revoked before he arrested and detained Trakselis. Trakselis' arrest and detention—the events that underlie Counts I and III of this complaint—were therefore supported by probable cause. *See Hope*, 906 F.2d at 258; *Gonzalez*, 2008 WL 3059468, at *6; *see also Butler v. Goldblatt Bros.*, 589 F.2d 323, 325 (7th Cir. 1978) ("[U]nder Illinois common law, an action for false arrest and imprisonment will lie if the arrest is made without probable cause.").

The Court's conclusion is even more true with respect to the seizure of the vehicle that Trakselis was driving and his subsequent prosecution for unlawfully driving with a revoked license. Those are the points in time that bear on Counts II and IV of his complaint. *See United States v. Mendoza*, 438 F.3d 792, 796 (7th Cir. 2006) ("[P]olice may seize a car without a warrant pursuant to a forfeiture statute if they have probable cause to believe that the car is subject to forfeiture."); *Walker v. City of Chicago*, 596 F. Supp. 3d 1064, 1071 (N.D. Ill. 2022) (probable cause is measured "right at the time of seizure"); *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011) ("For purposes of a malicious prosecution claim, the pertinent time for making the probable cause determination is the time when the charging document is filed, rather than the time of the arrest."). Although the parties dispute whether Officer Pavlik relied on his MDT and/or dispatch to confirm his knowledge of Trakselis' revoked Illinois license before arresting Trakselis, *see supra* at n.3, plaintiffs do not argue that confirmation had not been obtained by the time the

11

vehicle was seized and by the time Trakselis was charged with his offense, *see* Dash Cam at 4:41:40 (showing that vehicle had not been towed by 4:41 a.m., six minutes after Pavlik's 4:35 a.m. call to dispatch). Thus, the probable-cause determinations underlying those decisions were based not just on Officer Pavlik's personal knowledge as to the status of Trakselis' Illinois license but also on confirmation of that knowledge.

In short, the decisions to charge, detain, and prosecute Trakselis—as well as to tow his vehicle—based on his revoked Illinois license were supported by probable cause as a matter of law.

### B. Effect of Trakselis' Indiana Driver's License

Trakselis insists there was no probable cause because he possessed a valid Indiana driver's license—a fact that he claims Officer Pavlik "failed to take … into account." [129] at 6; *see also id.* at 7 (arguing that Officer Pavlik "ignored the valid Indiana license," which supplied "a reason to doubt probable cause"). Based on relevant Illinois law and Compact provisions, however, the Court disagrees that Trakselis' Indiana driver's license gave him driving privileges in Illinois. Thus, any failure by defendants to account for Trakselis' Indiana license in their probable-cause assessments is meaningless. Such consideration would have led to the same result: Trakselis was not permitted to drive in Illinois.

Illinois law expressly prohibits driving on a "foreign license" while one's driving privileges are suspended or revoked in Illinois. Specifically, 625 ILCS 5/6-210 provides:

12

> No operation *under foreign license* during suspension or revocation in this State. Any resident or nonresident whose drivers license or permit or privilege to operate a motor vehicle in this State has been suspended or revoked as provided in this Act shall not operate a motor vehicle in this State:
>
> (1) during the period of such suspension, except as permitted by a restricted driving permit issued under the provisions of Section 6-206 of this Act.
>
> (2) after such revocation until a license is obtained when and as permitted under this Act, except as permitted by a restricted driving permit issued under the provisions of Section 6-205 of this Act.

625 ILCS 5/6-210 (emphasis added).

In his response, Trakselis does not address § 6-210's prohibition against driving under a foreign license during a period of suspension or after revocation. Yet Trakselis admits that his two Illinois suspensions had not been lifted by the time of his arrest in May 2018. [131] ¶¶ 35, 38. And § 6-210(1) makes clear that a driver with an out-of-state license may not operate a vehicle in Illinois "during the period of [their] suspension." 625 ILCS 5/6-210(1). Accordingly, Trakselis' belief that he could legally drive in Illinois based on his facially valid Indiana license is mistaken.

In addition to his suspensions, Trakselis' three revocations also prohibited him from driving in Illinois. A string of Illinois intermediate appellate court cases has held that, under § 6-210(2), a driver whose Illinois license has been revoked but who has obtained a valid license from a Compact state cannot be charged under § 6-303. *See, e.g.*, *People v. Nance*, 2024 IL App (3d) 230365, ¶ 31 (3d. Dist. 2024). But those courts have required the out-of-state license to have been *validly* obtained following the Compact's procedures for obtaining a new license (codified in Illinois at 625 ILCS

13

5/6-704(2)). *See Nance*, 2024 IL App (3d) 230365, at ¶¶ 29–30 (citing *People v. Masten*, 219 Ill. App. 3d 172, 174–75 (5th Dist. 1991)). Relevant here, the Compact only allows for a new license to be "issue[d]" in another state if at least one year has passed from the date of revocation. *See* 625 ILCS 5/6-704(2) (under those circumstances, permitting an individual to "make application for a new license"). Trakselis' license was last revoked in July 2015, *see* [113-10], and the state of Indiana issued him a renewed license less than a year later in March 2016, *see* [113-11] at 5, 17. Therefore, his Indiana license was not properly obtained pursuant to the Compact, and he remains subject to § 6-303's prohibition on driving with a revoked license. *See People v. Romanosky*, 160 Ill. App. 3d 120, 124 (5th Dist. 1987) (defendant's West Virginia license did not excuse him from § 6-303 because he renewed his West Virginia license less than a month after the revocation of his Illinois license, making the renewal invalid under § 6-704(2) of the Compact).[7]

The Court declines Trakselis' invitation to rely on *People v. Eberhardt*, 138 Ill. App. 3d 148, 150 (3d Dist. 1985). There, defendant allowed his Illinois license to expire and subsequently acquired a Texas driver's license. *Id.* at 148. When visiting Illinois, defendant was convicted of driving under the influence and the Illinois Secretary of State revoked his previously expired Illinois license. *Id.* However, the Secretary of State never notified Texas of defendant's conviction, and he retained his

---

[7] Defendants cite to *United States v. Mounts*, 248 F.3d 712, 715–16 (7th Cir. 2001), to support their argument that Trakselis' facially valid Indiana driver's license does not change the probable cause analysis. Although the facts in *Mounts* are not exactly analogous to the facts here, the case does support the general proposition that an officer can have probable cause to arrest a defendant for driving with a revoked Illinois license even when the defendant has presented a facially valid license from another state. *Id.*

14

Texas license. *Id.* Then, on a later trip to Illinois, defendant was arrested and subsequently convicted for driving with a revoked Illinois license. *Id.* at 148–49. The Illinois appellate court recognized that "defendant was technically convictable because the expired license was validly revoked and defendant was operating a motor vehicle on the Illinois highways." *Id.* at 149–50. It overturned defendant's conviction anyway, reasoning that by failing to notify Texas of his conviction, "the State invited the defendant's conduct and abandoned any right to claim that he could not operate as a nonresident under a valid foreign license." *Id.* at 150.

Trakselis asks for the same outcome here, *see* [129] at 11–12, but the Court is not swayed by *Eberhardt*. First, *Eberhardt* did not analyze the effect of § 6-210 and whether the Texas license there was validly obtained under the Compact. Indeed, *Eberhardt* is inconsistent with other Illinois appellate cases holding that an improperly obtained out-of-state license does not excuse an individual from § 6-303's prohibition on driving with a revoked license. *See Masten*, 219 Ill.App.3d at 175; *Romanosky*, 160 Ill.App.3d at 124–25. Second, the question in *Eberhardt* was whether there was sufficient evidence to sustain a *conviction* for driving with a revoked license. 138 Ill.App.3d at 149. Here, the question is whether the officers had probable cause to believe Trakselis had committed a crime, and probable cause "does not require evidence sufficient to support a conviction." *United States v. Sawyer*, 224 F.3d 675, 679 (7th Cir. 2000) (probable cause exists where the totality of the

15

circumstances "reveals a *probability or substantial chance* of criminal activity on the suspect's part") (emphasis added).[8]

In sum, the Court finds there was probable cause to arrest, detain, and charge Trakselis for driving with a revoked license. Summary judgment is therefore appropriate on Trakselis' claims for false arrest, false imprisonment, and malicious prosecution (Counts I, III, and IV). The Court also finds there was probable cause for Officers Pavlik and Ward to believe that the vehicle Trakselis was driving was subject to forfeiture under Illinois law based on their reasonable belief that Trakselis had violated § 6-303(a) and his license had previously been revoked for driving under the influence. As a result, summary judgment is also appropriate as to Trakselis' claim for unreasonable seizure of property (Count II).

Because the Court finds that the existence of probable cause disposes of all four counts, it has no occasion to address defendants' remaining arguments.

---

[8] Even if there were a legal basis by which Trakselis could legally drive in Illinois by virtue of his Indiana license, any mistake of law would have been reasonable. *See Heien v. North Carolina*, 574 U.S. 54, 68 (2014) (officer's reasonable mistake in law supported reasonable suspicion to initiate a traffic stop); *see also Gomez v. Kruger*, No. 12 C 4804, 2019 WL 3321842, at *6 (N.D. Ill. July 24, 2019) (applying *Heien* to find reasonable mistake in law supported an officer's probable cause). Although the Court does not rest its holding on this point, *Heien* suggests that any mistake in law (if there were one) would still support probable cause as to Counts I, II, and III.

16

**CONCLUSION**

For the foregoing reasons, the Court grants defendants' motion for summary judgment as to all counts. [112].

_____
Georgia N. Alexakis
United States District Judge

Date: 12/5/24